[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Presently pending before the Court for decision are:
 (1) Defendants' motion for an order confirming that the September 7, 2005 trial will not be a trial of damages or remedies together with Plaintiff's objection thereto; and.
 (2) Defendants' demand for a jury trial on all issues and all remedies together with Plaintiff's opposition thereto.
These motions and their resolution must be addressed, not in isolation, but rather in the context of this now over five-year old litigation. This suit was commenced in October 1999, and by January of 2000, Motions to Dismiss had been filed by certain Defendants. While at least one additional Motion to Dismiss was filed in May of that year, it wasn't until April 2, 2001 that this Court filed its decision on the Motion to Dismiss (that Decision is found at 2001 R.I. Super. LEXIS 37) which had the effect of dismissing all or part of some of the various counts pleaded by Plaintiff. Some time thereafter the Attorney General filed a written motion seeking to bifurcate trial on such portions of the complaint that remained following the Court's earlier decision. That motion also sought to sever claims asserted by some or all of the Defendants seeking contribution and/or indemnification from third parties. On March 15, 2002, this Court filed a Memorandum of Decision which explicated an earlier bench decision providing for a bifurcated (etc.) trial, and which provided for a jury trial of what then was referred to as "Phase 1." The Phase 1 trial occurred in the autumn of 2002 and resulted in a "hung jury," so-called, on the issue presented to the jurors:
 "Does the presence of lead pigment in paint and in coatings in homes, schools, hospitals, and other public and private buildings throughout the State of Rhode Island constitute a public nuisance?"
Substantial additional motion practice followed with the present posture of the case being that there are pending (subject, however, to summary judgment motions filed or to be filed) five remaining counts. These counts asserted against Defendants are: Count I — Public Nuisance Common Law; Count II — Violation of Rhode Island Uniform Trade Practice and Consumer Protection Act, G.L. 1956 § 6-13.1-1 et seq.; Count VII — Civil Conspiracy; Count VIII — Unjust Enrichment; and Count IX — Indemnity.
The reduction in the number of counts resulted from (a) motion practice and (b) the voluntary act of the Plaintiff in relinquishing certain of its claims. On February 2, 2004, an Order entered dismissing those claims with prejudice. When Plaintiff dropped certain of its claims, the Court was confronted with two issues, both of which it dealt with in March of 2004, more than one year ago. First was the issue of what was to be tried and when and second was Plaintiff's request to strike Defendants' jury demand. A careful reading of the recorded transcript of hearing in the nature of a conference which took place in open court on March 3, 2004, upon which both Plaintiff and Defendants here rely, convinces the Court that from then on it was contemplated that trial would be held on all claims asserted by Plaintiff against Defendants (but not on third party claims asserted by Defendants as against others). Put differently, what had been bifurcated was put back together.
Further that transcript indicates that trial was to commence on April 5, 2005 (approximately 13 months following that conference). That transcript also discloses that under certain circumstances there might be a further delay in commencing the trial. Indeed, those circumstances came to pass and the Defendants convinced the Court that trial should be delayed until September of 2005. Accordingly, trial was rescheduled to September 7, 2005, the date presently on which the trial is scheduled to start.
On April 7th and 8th of this year, following countless other hearings and filings on diverse issues implicated in this complex case, hearing was held by this Court addressing the issues referred to at the inception of this decision. Well over 200-pages of transcript memorialized every argument and every reference back to arguments previously presented to the Court and colloquy between the Court and counsel. At one point during those hearings, the Court had occasion to remark, with respect to the March 3, 2004 transcript referred to above, that it hadn't had time to review the transcript which had just been furnished to it; but that, in fact, it would. Indeed, upon review of that transcript the Court noted that it had directed that the results of that conference be reduced to the form of an Order. The Court finds it incredible that no one on either side of the issue had bothered to call to the Court's attention its direction that an Order be prepared, and that no one on either side of the issue predicated argument on that Order, at least as to what the scope of the April 5, 2005 (now September 7, 2005) trial was to be.
So as to refresh everyone's recollection with respect to that Order, the Court is attaching to this Decision as Exhibit A a copy of the original order which was entered, docketed and filed with the records of the Providence County Superior Court Clerk's Office on March 22, 2004. It is abundantly clear to the Court that the second paragraph of that Order provides for trial on all claims (not just liability) to take place on April 5, 2004 (changed as aforesaid) and that any impediment to discovery with respect to all claims and defenses was vitiated by the provisions of paragraph 4 of that Order. Black Letter Law tells us that courts speak through their orders and decrees. Accordingly, the Court reiterates that trial of this case shall commence as heretofore scheduled on September 7, 2005; the trial shall cover all claims and defenses and, of course, shall include damages and remedies. The Court reminds the parties that Defendants' third parties claims are severed.
Turning now to the issue implicated by the Defendants' demand for a jury trial on all issues and all remedies. The Court notes at the outset of the discussion on this topic that in its Decision of March 16, 2004 (found at 2004 R.I. Super. LEXIS 56) this Court had occasion to conclude at page 5 as follows:
 "It follows that because trial by jury is required and because all liability issues under all counts are to be tried together, that trial by jury is mandated at least in respect to all disputed facts."
Of course, that language applies to Count II, as well as all other pending counts in the Second Amended Complaint. Further there can no question that with respect to the imposition of money damages that may flow from a finding of liability on one or more of the counts to be tried to the jury, the question of the magnitude of such damages and whether or not punitive damages, if appropriate, are to be awarded and, if so, the amount thereof is a question uniquely in the first instance within the ken of the jury acting under proper instructions.
In the protracted arguments covering the two days referred to above, substantial portions of those arguments dealt with the issue of whether or not Plaintiff, under any given set of circumstances or any given evidence to be adduced at trial, might be entitled to equitable relief. Essentially, Defendants forcefully argued that it was deceptive of the State now to characterize relief sought by it as the provision of services rather than the provision of funding for services such as abatement, educational and health plans. Plaintiff argued to the Court that it originally had pleaded a count specifying equitable relief (Count X), and reminded the Court that the Court had held that that relief was subsumed in other of the counts of the original complaint. The issues raised by Defendants are of extreme significance to this Court. The Court does not believe that in connection with relief, if any ultimately to be granted in the nature of equitable remedies in this case, that it should serve as or is equipped to serve as a super administrative agency of government. In that connection, it ultimately may turn out that Defendants properly have analyzed this issue and that ultimately what the State as Plaintiff asks really is for an award of funds (damages) to be determined by the jury to carry out the abatement and other programs proposed by the plaintiff. Having said that, the Court believes that presently it is premature for the Court to rule as a matter of law that there could not be any set of facts that may be proven at trial justifying equitable relief as determined by the Court.
The Court leaves open for determination at the end of trial the issue of whether equitable relief may be appropriate.
Plaintiff's counsel shall prepare an Order consistent herewith which shall be settled upon notice to all parties.